## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL WOOLUMS,** | : | **CIVIL ACTION NO. 1:06-CV-0787** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONAL RV and WORKHORSE** | : | |
| **CUSTOM CHASSIS,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is the motion (Doc. 12) of defendant National RV ("National")[1] for summary judgment on the claims of plaintiff Daniel Woolums ("Woolums") for alleged violations of the Magnuson-Moss Warranty–Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301–2312; the warranty provisions of Pennsylvania Uniform Commercial Code, 13 PA. CONS. STAT. §§ 2313-2316; and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. ANN. §§ 201-1 to 201-9.3.  For the reasons that follow, the motion will be granted in part and denied in part.

---

[1]Defendant Workhorse Custom Chassis, which is not party to the instant motion, appears to be incorrectly listed on the docket as Workhouse Custom Chassis.  The defendant's filings to date indicate that the former spelling is correct, and the clerk of court will be instructed to amend the docket accordingly.

I.   **Statement of Facts**[2]

On or about October 11, 2004, Woolums took possession of a new motor home he had purchased one month earlier.  (Doc. 15 ¶ 1; Doc. 22 ¶ 1.)  The motor home was assembled by National.  (Doc. 15 ¶ 3; Doc. 22 ¶ 3.)  National issued a one-year "limited warranty" covering "the cost of parts and labor needed to correct Covered Defects related to materials or workmanship" used to assemble the motor home.  (Doc. 24, Ex. 2 at 1, 9.)  The warranty makes no representation that the covered materials and workmanship conform to any standard of quality or performance, nor does it guarantee that the motor home will be free of defects during the warranty period.  It merely provides that National will repair or replace any "Covered Defect" during that period.  (Id. at 9.)  A "Covered Defect" is one resulting from any manufacturing or assembly process performed by National.  (Id.)  Defects in components manufactured by other suppliers and used by National to assemble the motor home fall outside the warranty, though such components may be separately warranted by their respective manufacturers.  (Id. at 12).

Unfortunately for Woolums, problems with his purchase arose shortly after he took possession of the motor home.  On November 11, 2004—only one month after taking possession of the vehicle—Woolums returned it to the dealer for the following repairs:  storage compartment doors that were unaligned and leaking

---

[2]In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff, as the non-moving party.  See infra Part II.

were corrected; the rear hydraulic leveling system was cleaned; a drawer in the

bathroom that would not latch was realigned; a bathroom vent was resealed to

prevent air leakage; a defective circuit board for the refrigerator was replaced; a

loose radio antenna was secured to the roof; and a power steering fluid leak was

corrected.  (Doc. 25, Ex. 3.)  Roofing fabric was also torn, and the dealer ordered

replacement material for later installation.  (Doc. 26, Ex. 4; <u>see also</u> Doc. 19 at 37.)

Woolums received the repaired vehicle in early January 2005.  (Doc. 26, Ex. 4; <u>see</u>

<u>also</u> Doc. 19, Ex. D at 37.)

Unfortunately, Woolums continued to experience problems with the motor

home.  Woolums returned it to the dealer on March 7, 2005 due to the following

problems: the extendable living room slide-out had an opening to the exterior; the

bedroom window awning lacked tension; the hazard lights were inoperable; the

misaligned storage compartment doors from the November service were now

warped; the main door was warped; tow lights and marking lights above the rear

tires were not functioning; and the drivers' side roof was dented and buckling.[3]

(Doc. 27, Ex. 5.)  The roofing fabric ordered at the time of the November repair was

also installed.  (<u>Id.</u>)  Woolums regained possession of the motor home on March 24,

2005.  (<u>Id.</u>)

Woolums was back at the dealer only two weeks later on April 8, 2005 for

another battery of repairs.  (Doc. 28, Ex. 6.)  The jacks were functioning improperly;

---

[3]The work order states with respect to the roof defects:  "CUSTOMER
SATISFIED AS LONG AS IT DOESN'T LEAK ITS [sic] OK."  (Doc. 27, Ex. 5.)

the hydraulic system was checked for leaks; the seal on an extendable slide-out was attached improperly; a tire showed indications of abnormal wear; the storage compartment seals were loose; awning mounting brackets on the vehicle's left side were bent; springs on the same awning lacked tension; rain gutter end pieces had fallen off; and the glove box was cracked.  (Id.)  Woolums also complained that the range hood fan was missing an exterior flap.  (Id.)  This repair was not performed because the vehicle was not designed to feature a flap.  (Id.; see also Doc. 19, Ex. D at 70-71.)  It is unclear how long the RV was at the dealer for the remaining repairs.

August 24, 2005 found Woolums at the dealer again, returning the now thrice-repaired vehicle for further service.  Woolums complained that the countertop was cracked; the microwave exhaust vent was missing, allowing cool air to enter the living compartment; a seam in the passenger seat was fraying; a compartment door strut was broken; screws in the extendable living room slide-out were coming loose; the bedroom slide-out screeched when extended; the water pump supplying the kitchen and bathroom provided poor pressure; the front end was misaligned; rubber around the entry door screen was coming loose; the screen was falling out of the compartment door; a decal on the side of the RV had been cut as a result of the bent awning repaired during the April service; and the screws securing trim on the exterior of the extendable living room slide-out were coming loose.  (Doc. 29, Ex. 7.)  The dealer ordered a replacement countertop, water pump, screen, and compartment door strut, which were later installed.  (Doc. 30, Ex. 8; Doc. 31, Ex. 9.)  Woolums testified that he is dissatisfied with the countertop repair because he

4

believes the counter is inadequately supported and likely to crack again in the future. (Doc. 19, Ex. D at 49.)

Woolums returned the RV for a final service in October 2005 for repair of the fraying seam in the passenger seat; a crooked steering wheel; a loose storage compartment door; a broken storage compartment strut; and loose mounting bolts securing the entry steps to the vehicle frame. (Doc. 31, Ex. 9.) The one-year warranty period expired during October 2005; however, the RV remained with the dealer for these repairs until January 2006. (Doc. 19, Ex. D at 53.) During the spring of 2006, a water leak developed in the bathroom roof and the television began to malfunction. (Id. at 82-83.)

Woolums claims that the numerous repair attempts failed to remedy several of the RV's defects. He testified that, by the time he instituted the present action, the glove box remained cracked; the bedroom slide-out continued to screech; the water pump failed to supply adequate water pressure; the tires showed signs of abnormal wear; the storage compartment doors were again becoming warped and leaking; and the power steering system continued to malfunction. (Id. at 46, 51-52, 70, 75, 81-82, 85-86.) Woolums presented the RV to the dealer on seven separate occasions, and the dealer retained it for a total of eight months. (Doc. 15 ¶ 7; Doc. 19, Ex. D at 90; Doc. 22 ¶ 7.) Woolums was not required to pay for either the parts or labor associated with the repairs. (Doc. 19, Ex. D at 94.)

Woolums instituted the above-captioned action in a Pennsylvania state court in January 2006, and defendants removed it to United States District Court for the

Eastern District of Pennsylvania.  (See Doc. 1-2.)  It was transferred to this court on

April 10, 2006.  (See Doc. 1 at 2.)  The complaint alleges violations of the Magnuson-

Moss Warranty–Federal Trade Commission Improvement Act ("Magnuson-Moss

Act"), 15 U.S.C. §§ 2301-2312; the warranty provisions of the Pennsylvania Uniform

Commercial Code ("the UCC"), 13 PA. CONS. STAT. §§ 2313-2314; and the

Pennsylvania Unfair Trade Practices and Consumer Protection Law ("the

UTPCPL"), 73 PA. STAT. ANN. §§ 201-1 to -9.3.  The parties have briefed these issues,

which are ripe for disposition.

## II.    <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do

not present a "genuine issue as to any material fact," and for which a jury trial

would be an empty and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(c).  It places

the burden on the non-moving party to come forth with "affirmative evidence,

beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v.

City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see

also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be

adequate, as a matter of law, to sustain a judgment in favor of the non-moving party

on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986);

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see

also</u> FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action

proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

6

**III.**   **Discussion**

Woolums maintains claims for breach of warranty under the federal

Magnuson-Moss Act and the UCC.[4]  The protections of Magnuson-Moss are broader

than those provided by the UCC.  <u>Compare</u> 15 U.S.C. §§ 2301, 2310(d)(2) (allowing

plaintiff to recover actual damages, costs, and attorney's fees for breach of

warranties and other service contracts), <u>with</u> 13 PA. CONS. STAT. §§ 2313-2315, 2703-

2715 (permitting recovery of actual damages for breach of warranty).  The court will

analyze the narrower UCC claims first and later consider the Magnuson-Moss

claim.  Finally, Woolums contends that the alleged breach of warranty constitutes a

cognizable claim under the UTPCPL.

**A.**   **The Warranty Claims under the UCC**

Woolums raises two UCC warranty claims:  (1) he alleges that the repair-or-

replace covenant constitutes an express warranty actionable under the UCC; and

(2) he claims that National has breached the implied warranties of merchantability

and fitness for a particular purpose.  The court will address these issues *seriatim*.

---

[4]Pennsylvania has adopted Article 2 of the Uniform Commercial Code with minimal variation from the statutory language proposed by the Uniform Law Institute.  <u>See</u> <u>Forms and Procedures under the Uniform Commercial Code</u>, U.C.C. Serv. (MB), Tbl. of State Variations, Pennsylvania, <u>available at</u> LEXIS, 5G-2 Forms & Procedures Under the UCC 2.syn (LEXIS through Jan. 15, 2008) (listing Pennsylvania distinctions for UCC Article 2); <u>compare, e.g.</u>, 13 PA. CONS. STAT. § 2201(d), <u>with</u> UNIF. COMMERCIAL CODE § 2-201, 1A U.L.A. 8 (2004).  None of the Pennsylvania variations applies to the UCC provisions at issue in the instant case.

1.     **The Express Warranty Claim**

The UCC's express warranty provision states that a seller issues a warranty

under the following circumstances:

> (1)   Any affirmation of fact or promise made by the seller to the buyer
> which relates to the goods and becomes part of the basis of the
> bargain creates an express warranty that the goods shall conform to
> the affirmation or promise.
>
> (2)   Any description of the goods which is made part of the basis of the
> bargain creates an express warranty that the goods shall conform to
> the description.

13 PA. CONS. STAT. § 2313(a)(1)-(2).

a.     **Existence of an Express Warranty under the UCC**

Application of UCC Article 2 to a repair-or-replace warranty is problematic

because prior applications have reached contradictory conclusions about whether

the UCC governs such a warranty.  Some courts to have considered the issue have

concluded that such a warranty is not governed by the UCC because it lacks an

affirmation that the tendered goods will conform to a particular standard of quality

or performance.  See, e.g., Crouch v. Gen. Elec. Co., 699 F. Supp. 585, 594 (S.D.

Miss. 1988) (quoting Ont. Hydro v. Zallea Sys., Inc., 569 F. Supp. 1261, 1266 (D. Del.

1983)) (reasoning that a repair-or-replace covenant is not an express warranty

because it "'does not warrant how the goods will perform in the future'"); Mydlach

v. DaimlerChrysler Corp., 875 N.E.2d 1047, 1058 (Ill. 2007) (holding that a repair-or-

replace warranty is not governed by the UCC because it is "not the type of warranty

that can be breached on tender of delivery" (quotations omitted)).  Others have

8

determined that a repair-or-replace covenant, like a warranty of performance or quality, is part of the "basis of the bargain" between the buyer and the seller, 13 PA. CONS. STAT. § 2313(a)(1), and therefore qualifies as an express warranty under the UCC, see, e.g., Pack v. Damon Corp., 434 F.3d 810, 814 (6th Cir. 2006) (concluding that a repair-or-replace warranty constitutes an express warranty within the parameters of the UCC); Monticello v. Winnebago Indust., 369 F. Supp. 2d 1350 (N.D. Ga. 2005) (quoting McDonald v. Mazda Motors of Am., 603 S.E.2d 456, 460 (Ga. Ct. App. 2004)) (stating that a repair-or-replacement warranty is an express warranty that may be breached by the warrantor's repeated failed repairs).

Pennsylvania courts have not squarely addressed this issue,[5] though the Pennsylvania Supreme Court has described a repair-or-replace warranty as "a 'promise made by the seller to the buyer which relates to the goods'" created under § 2313(a)(1) of the Pennsylvania UCC.  Nationwide Ins. Co. v. Gen. Motors Corp., 625 A.2d 1172, 1177 (Pa. 1993) (citing 13 PA. CONS. STAT. § 2313).  It has also acknowledged that such warranties "fit within the modern concept of warranty" even if "they do not fit strictly into the conceptual framework established by the provisions of the UCC."  Id.

In light of this characterization, the court finds that applying title 13, section 2313(a)(1) of the Pennsylvania Consolidated Statutes to repair-or-replace warranties

---

[5]In the absence of controlling Pennsylvania precedent, this court must predict how the Pennsylvania Supreme Court would resolve this issue were it presented to that court.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 474 (3d Cir. 2001).

represents the more persuasive resolution of this split of authority.  Both the

statutory and contractual language at issue in the instant case support this

outcome.  First, section 2313(a)(1) states that "*any* affirmation of fact or promise

made by the seller to the buyer which relates to the goods and becomes part of the

basis of the bargain creates an express warranty that the goods shall conform to the

affirmation or promise" (emphasis added).  The terms of the statute do not limit

express warranties to representations regarding quality or performance, as

National contends.  Rather, the word "any" suggests all express promises made by

the seller that pertain to the goods become warranties, even if they do not

specifically address the goods' quality or nature.  The breadth of statutory language

therefore encompasses repair-and-replace warranties as well as traditional

warranties of quality and performance.

The UCC official comments confirm that § 2313 is to be given wide berth.

Comment 4 illustrates the section's scope:

> [T]he policy is adopted of those cases which refuse except in unusual
> circumstances to recognize a material deletion of the seller's
> obligation. . . . A clause generally disclaiming "all warranties, express
> or implied" cannot reduce the seller's obligation with respect to such
> description and therefore cannot be given literal effect under Section
> 2-316.  This is not intended to mean that the parties, if they consciously
> desire, cannot make their own bargain as they wish.  But in
> determining what they have agreed upon good faith is a factor and
> consideration should be given to the fact that the probability is small
> that a real price is intended to be exchanged for a pseudo-obligation.

13 PA. CONS. STAT. § 2313 cmt. 4.  Clearly, the parties may relieve a seller of

warranty obligations if they so choose, but Comment 4 suggests that such an

agreement should bear the hallmarks of a good-faith bargained exchange.  Such

hallmarks are notably lacking in the instant case, in which Woolums had no power

to bargain about the terms of the warranty coverage he received from National.

The court therefore finds that both the statutory provisions and the policies

undergirding the UCC support a finding that the repair-or-replace covenant is an

express warranty within § 2313.

Further, the language of National's repair-or-replace covenant supports a

finding that it is an express warranty under the UCC.  The document issued by

National is styled "Limited Warranty for All Motorized Products."  (Doc. 24, Ex. 2 at

1.)  It states that "[t]his limited warranty is for National RV units sold by an

authorized dealer."  (Id. at 9.)  It informs consumers that "[t]his warranty gives you

specific legal rights and you may also have other rights that vary from state to

state."  (Id. at 18.)  It further advises: "[t]his written warranty is the only *express*

*warranty* from National RV."  (Id. (emphasis added).)  Having represented to its

consumers that the repair-or-replace covenant is an express warranty, it would be

fundamentally unfair to permit National to invoke an illusory construction of its

contractual language, leaving merely a remedial promise of repair.[6]  The court finds

that the repair-or-replace covenant is an express warranty governed by Article 2 of

the Pennsylvania Uniform Commercial Code.

### b. National's Alleged Breach of Warranty and Available Remedies

Woolums claims that National breached its express repair-or-replace

warranty and advances to theories of recovery.  First, he claims that National is

liable for breach of warranty as written.  He alternatively contends that the written

warranty failed its essential purpose and that, pursuant to § 2719(b), he is able to

pursue any remedy under the UCC.

### i. Damages for Breach of Warranty

Woolums may maintain a breach of warranty claim only to the extent that the

warranty imposed an obligation upon National.  See Lackner v. Glosser, 892 A.2d

21, 30 (Pa. Super. Ct. 2006) (noting that the existence of a contractual obligation is

---

[6]The express warranty at issue, like many contracts between commercial
sellers and consumers, is one of adhesion.  Thibodeau v. Comcast Corp., 912 A.2d
874, 882 (Pa. Super. Ct. 2006) ("Contracts of adhesion are standardized form
contracts presented to consumers without negotiation or any option for
modification.").  Adhesion contracts are not per se invalid, but courts strictly
construe them against the drafting party, who holds a position of superior
bargaining power and can dictate the agreement's terms.  See Zimmerman v.
Unemployment Comp. Bd. of Review, 836 A.2d 1074, 1080 (Pa. Commw. Ct. 2003)
(noting that adhesion contracts are enforceable but "subject to construction against
the drafter"); cf. Todd Heller, Inc. v. United Parcel Svc., 754 A.2d 689, 700-01 (Pa.
Super. Ct. 2000) (observing that adhesion contracts are not per se unconscionable
but may become so if they unreasonably favor the drafting party).  Therefore, the
warranty document in the instant matter must be interpreted in favor of Woolums,
the non-drafting party.

essential to a breach of contract claim).  The written warranty covers all
manufacturing and assembly performed by National.  (See Doc. 24, Ex. 2 at 9.)  It
does not cover component parts manufactured by other suppliers.  (Id. at 12.)  The
chassis, air conditioning, and leveling jacks are all explicitly excluded under this
exception.  (Id.)  The warranty also excludes defects arising from adjustments
necessary due to normal use of the vehicle.  (Id.)  Adjustments to the "entry doors,
cabinet doors, shelving, [and] interior doors" fall under this exception, as do front
end alignments.  (Id.)  Items that function properly but that the owner wishes to
change due to subjective design preference are also outside the warranty, as is
damage caused by road wear or environmental elements.  (Id. at 12-13.)

Several of the repairs in the instant case are excluded under these warranty
exceptions.  The defects with the leveling jacks fall within the exclusion for
components not manufactured by National RV.  The defective television,
manufactured by RCA, (see Doc. 19, Ex. D at 75), is likewise excluded.[7]  Alleged
defects in the countertop and the range hood fan are the result of Woolums'
subjective dissatisfaction with the design of the motor home and are also excluded
under the warranty.  (Doc. 19, Ex. D at 49-50, 70-71; Doc. 28, Ex. 6.)  Summary

---

[7]The television defects also cannot support a claim for breach of warranty
because they occurred outside the warranty period.  The warranty period began
when Woolums took possession of the vehicle during early October 2004.  (Doc. 24,
Ex. 2 at 10; see also Doc. 15 ¶ 1; Doc. 22 ¶ 1.)  It expired one year later, in October
2005.  (Doc. 24, Ex. 2 at 10.)  The television did not malfunction until the spring of
2006.  (Doc. 19, Ex. D at 82.)

judgment on the breach of warranty claim will be granted to the extent predicated upon these defects.[8]

Several other defects were successfully repaired[9] or never presented to National, rendering them unable to support a breach of warranty claim. Successfully repaired defects include the misalignment of the steering wheel and defects in the bathroom vent, fan, roof panels, antenna cable, entry door steps, awnings, screen door, screws in the living room slide-out, hazard and marking lights, rain gutter ends, and refrigerator circuit board.[10]  (Doc. 19, Ex. D at 37, 41, 50-51, 53, 62, 68, 72-73.)  Woolums also undertook repairs himself on at least two occasions, when he removed keys that were jammed in the compartment door and adjusted a misalignment in the main awning.  (Id. at 79-80.)  These repairs were

---

[8]The parties' expert reports indicate that Woolums is experiencing problems with a fan in the front air conditioning unit.  (Doc. 16, Ex. E at 7; Doc. 20, Ex. F at 2.) It does not appear from the record that this defect was presented to National for repair; regardless, the air conditioner units are not manufactured by National and are not covered by the warranty.  (Doc. 24, Ex. 2 at 12.)

[9]The court's assessment that certain defects were successfully repaired is supported both by Woolums' deposition testimony and by a review of the work orders for the RV.  The work orders indicate that the dealer performed many repairs about which Woolums never subsequently complained.  The court concludes that, as Woolums never controverted the success of many repairs, they were adequate to correct the corresponding alleged defects.

[10]Complaints about the adequacy of slide-out seals, misaligned drawers and closet doors, and a tear in the passenger seat also appear in various work orders. (See, e.g., Doc. 25, Ex. 3; Doc. 28, Ex. 6; Doc. 29, Ex. 7; Doc. 31, Ex. 9.)  The court has been unable to locate any evidence in the record that repair attempts were unsuccessful in resolving these issues.  The court will grant the motion for summary judgment to the extent Woolums' breach-of-warranty claim rests on these defects.

never presented to National.  Similarly, the record contains no indication that the

leak in the bathroom was presented to National for repair.[11]  Because these repairs

were either successful or never presented to National, they cannot provide grounds

for a breach of warranty claim.  Summary judgment on the breach of warranty

claim will be granted as to these defects.

      Still other repairs were either refused or defectively performed by National.

National denied warranty coverage for a crack in the glove box.  (Id. at 46.)  Repairs

for defective windshield wiper motors were also refused because the dealer was

unable to corroborate the problem despite Woolums' assertion that they functioned

incorrectly.  (Id. at 84.)  Woolums also testified that, despite several repair attempts,

the storage compartment doors continue to leak and that their condition has

deteriorated as a result of inadequate repairs.[12]  (Id. at 74.)  Repairs to prevent the

bedroom slide-out from screeching were also unsuccessful, as were repairs to the

water pump and power steering.  (Id. at 51-52, 82.)  The court concludes that

Woolums has demonstrated the existence of a genuine issue of material fact about

---

[11]This defect developed during the spring of 2006.  Had it been presented to
National, it may have been covered under the three-year structural warranty on the
RV's welds and steel structure.  (See Doc. 24, Ex. 2 at 9.)

[12]National's expert asserts that the storage compartment doors are excluded
from the warranty because damage to them resulted from exposure to adverse
weather conditions and other environmental elements.  (See Doc. 16, Ex. E at 8.)
Nevertheless, the repeated storage compartment repairs raise a genuine issue of
material fact regarding whether the damage resulted from environmental elements
or defective assembly.  Summary judgment on the breach of warranty claim must
be denied as to this alleged defect.

whether National remedied these problems in accordance with the repair-or-replace warranty.  Summary judgment on these claims must be denied.

Similarly, National attempted to remedy front end misalignment by balancing the tires.  (Id. at 67.)  These attempts were unsuccessful.  (Id. at 70.) National contends that front end alignment is outside warranty coverage.  However, by demonstrating that balancing attempts failed, Woolums has raised a genuine issue of material fact about whether these problems arise from the alignment issues or from a defective assembly of the front end.  Summary judgment on the breach of warranty claim will therefore be denied to the extent it arises from the abnormal tire wear patterns that remain uncorrected after service by National.

## ii.   Other Remedies under the UCC

Woolums argues that, notwithstanding the warranty's exclusive repair-or-replace provisions, he may also pursue other remedies under the UCC.  Section 2719 of the UCC permits parties to a transaction to limit the buyer's remedies for breach but provides that the limited remedy may be extinguished if it "fail[s] of its essential purpose."  13 PA. CONS. STAT. § 2719(b).  "When presented with the question whether an exclusive repair remedy fails of its essential purpose, courts generally have concluded that so long as the buyer has the use of substantially defect-free goods, the limited remedy should be given effect.  But when the seller is either unwilling or unable to conform the goods to the contract, the remedy does not suffice."  Chatlos Sys., Inc. v. Nat'l Cash Register Corp., 635 F.2d 1081, 1085 (3d

16

Cir. 1980).[13]  A seller must perform repairs within a reasonable amount of time after the buyer presents the defective product, and "a delay in supplying the remedy can just as effectively deny the purchaser the product he expected as can the total inability to repair."  Id.  A limited remedy may be invalidated regardless of the seller's good-faith repair efforts because the seller's scienter has no effect on the benefit the buyer receives from a defective product.  See id.  ("The detriment to the buyer is the same whether the seller diligently but unsuccessfully attempts to honor his promise or acts negligently or in bad faith.").  Whether a limited warranty has failed its essential purpose is a question of fact for the jury.  See Strickler v. Peterbilt Motors Co., No. Civ. A. 04-3628, 2005 WL 1266674, at *4 (E.D. Pa. May 27, 2005) (denying defendant's motion for summary judgment because plaintiff produced sufficient evidence to allow a jury to conclude that the defendant's limited warranty had failed its essential purpose).

In the case *sub judice*, Woolums contends that the repair-or-replace warranty failed the essential purpose of remedying alleged defects in the motor home. Woolums has proffered evidence that he was unable to use the motor home for approximately eight months for repairs covered by the warranty.  (Doc. 19, Ex. D at 90.)  Woolums testified that he contacted National's customer service center as early as April 2005 to discuss the defective storage compartment doors and other

---

[13]Chatlos applied § 12A:2-719 of the New Jersey Statutes, the substantive provisions of which are identical to § 2719 of the Pennsylvania UCC.  Compare N.J. STAT. ANN. § 12A:2-719, with 13 PA. CONS. STAT. § 2719.

problems.  (See id. at 73-75.)  He stated that National rebuffed his complaints and

told him to "see the dealer" even though he had already done so on three prior

occasions.  (See id. at 74; see also Doc. 25, Ex. 3; Doc. 27, Ex. 5; Doc. 28, Ex. 6.)

Problems with the storage compartment doors and other RV components continued

despite his efforts to resolve the situation directly with National.  (See, e.g., Doc. 20

at 2; Doc. 29, Ex. 7.)  Woolums testified that National refused to repair at least one

defect—the crack in the glove box.  (Doc. 19, Ex. D at 46.)

National disputes Woolums' affirmations.  According to National, the dealer's

repair orders for the motor home indicate that the RV was in the dealer's

possession for only four months of the twelve-month warranty period.  (See Doc . 32

at 2; see generally, Doc. 16, Ex. E at 82-101 (cataloguing repair orders, which contain

dates reflecting delivery and pick-up of the motor home for service); Doc. 17, Ex. E

at 1-11 (same).)  National also contends that it authorized the dealer to provide

prompt, adequate repairs on each occasion that Woolums presented the motor

home for service, thereby honoring the terms of the warranty.

Clearly, the positions of Woolums and National diverge significantly in their

descriptions of the repairs performed and their efficacy in remedying the RV's

alleged defects.  These conflicting accounts present a genuine issue of material fact

regarding whether National's repair-or-replace warranty failed its essential purpose

to resolve defects in the motor home.  The motion for summary judgment will

therefore be denied to the extent Woolums contends the repair-or-replace warranty

failed its essential purpose.

2.      **The Implied Warranty Claims**

A seller may disclaim the implied warranties of merchantability and fitness

for a particular purposes provided that "the disclaimer is in writing and

conspicuous." <u>Strickler</u>, 2005 WL 1266674, at *4; <u>see also</u> 13 PA. CONS. STAT.

§ 2316(b) ("[T]o exclude or modify the implied warranty of merchantability or any

part of it the language must mention merchantability and in case of a writing must

be conspicuous, and to exclude or modify any implied warranty of fitness the

exclusion must be by a writing and conspicuous."). A disclaimer of implied

warranties is conspicuous if "'a reasonable person against whom the modification

or exclusion is to operate ought to have noticed it.'" <u>Strickler</u>, 2005 WL 1266674, at

*4 (quoting <u>Hornberger v. Gen. Motors Corp.</u>, 929 F. Supp. 884, 889 (E.D. Pa. 1996)).

When assessing the reasonableness of a disclaimer, the court may consider the

disclaimer's placement within the warranty document, the size of the typeface in

which the disclaimer appears, and the use of typographic styles, colors, and

highlighting to call attention to the disclaimer. <u>See id.</u> (citing <u>Calabria v. Newmar</u>

<u>Corp.</u>, No. Civ. A 98-4026, 1999 WL 98574, at *1 (E.D. Pa. Feb. 26, 1999)).

In the instant case, National's repair-or-replace warranty contains language

on page 18 stating: "TO THE EXTENT LAW PERMITS, NATIONAL RV

DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING THE IMPLIED

WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR

PURPOSE." (Doc. 24, Ex. 2 at 18.) The page contains a header advising: "Please

Read: Important Legal Notices." (<u>Id.</u>) The disclaimer appears at the end of the

warranty booklet in boldface type alongside other legal notices.  It is displayed in a typeface larger than that used throughout the other warranty provisions.

The court finds that this disclaimer is sufficiently conspicuous to apprise a reasonable person that National has disclaimed both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.  Cf. Hornberger, 929 F. Supp. at 889 (holding that warranty disclaimer, located in the middle of a 37-page warranty booklet, was effective because it appeared in bold type and was enclosed with a dark border).  Accordingly, the court will grant National's motion for summary judgment on Woolums' implied warranty claims.

### B.   **Magnuson-Moss Claim**

The Magnuson–Moss Act, 15 U.S.C. §§ 2301-2312, was enacted to protect consumers and address concerns about manufacturers and others that do not fulfill the obligations of their warranties.  See Harrison v. Nissan Motor Corp., 111 F.3d 343, 351 (3d Cir. 1997).  The Act provides relief for consumers "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the Act], or under a written warranty, implied warranty, or service contract."  15 U.S.C. § 2310(d)(1); see also Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 402 (3d Cir. 2004).  "[W]ritten warrant[ies]" under the act include those which guarantee that the seller will "repair, replace, or take other remedial action with respect to [a defective] product in the event that such product fails to meet the specifications set forth in the undertaking."  See 15 U.S.C. § 2301(6)(B).  A violation of the act allows the consumer to seek recovery of the purchase price of

the product plus attorney's fees and costs.  See 15 U.S.C. § 2310(d); Suber v. Chrysler Corp., 104 F.3d 578, 589 n.12 (3d Cir. 1997).

As discussed in Part III.A.1, supra, the evidence of record indicates that National made numerous repairs to the motor home free of charge.  However, Woolums' deposition testimony reflects that National refused to repair a crack in the dashboard and that the bedroom slide-out continued to screech after National's repair attempts.  He also testified that the storage compartment doors, water pump, and tire alignment remain defective despite repairs.  He indicated that National failed to address these concerns when he telephoned their customer service center, instead instructing him to "see the dealer."  (Doc. 19, Ex. D at 73-75.)  In accordance with the applicable standard of review,[14] a reasonable jury could find that defendants failed to abide by the terms of their warranty, in violation of the Magnuson-Moss Act.  Accordingly, summary judgment on that claim will be denied.

## C.   The UTPCPL Claim

The UTPCPL is designed to protect the public from fraud and deceptive business practices.  See Pirozzi v. Penske Olds-Cadillac-GMC, Inc., 605 A.2d 373, 375 (Pa. Super. Ct. 1992); Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc., 574 A.2d 641, 644 (Pa. Super. Ct. 1990).  To achieve that purpose, the UTPCPL provides a private right of action for "any person who purchases . . . goods or services primarily for personal, family or household purposes and thereby

---

[14]   See supra note 2.

suffers any ascertainable loss of money or property" because the seller engaged in "unfair or deceptive acts or practices." 73 PA. CONS. STAT. ANN. §§ 201-3, -9.2(a).  A seller's "fail[ure] to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods" is actionable under the UTPCPL as well as under the UCC.  See id. § 201-2(4)(xiv); see also Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 647 (Pa. Super. Ct. 1999) (reversing trial court's grant of summary judgment to defendant automobile manufacturer on plaintiff's UTPCPL claim for breach of repair-or-replace warranty because plaintiff repeatedly returned vehicle for the same recurring problem).  A plaintiff may recover the greater of either "actual damages or one hundred dollars." See 73 PA. CONS. STAT. ANN. § 201-9.2(a).

In the instant case, Woolums has produced sufficient evidence to raise a genuine issue of material fact regarding National's compliance with its warranty. See supra Part III.A.1.  National's alleged breach of written warranty is therefore actionable under the UTPCPL, and summary judgment on that claim will be denied.

National further asserts summary judgment on the UTPCPL claim should be granted to the extend that it seeks damages in excess of the $100 statutory amount. It contends that Jeffrey Taylor, Woolums' expert witness, has failed to explain the rationale underlying his conclusion that the repairs to the RV have caused its value to decrease by half.  Its motion is therefore a challenge to Taylor's conclusions and methodology pursuant to Rule 702 of the Federal Rules of Evidence.

Taylor's report opines as follows:

> According to the November 2005 "NADA Official Used Car Guide," this 2005 National RV Seabreeze should have a retail value of $91,980[;] however[,] due to its repair history and current condition it is worth no more than 50% of that amount.  That 50% difference applied to the purchase price represents the difference in the value of this vehicle, as warranted, (to be free from significant defects) and as delivered (with defects that substantially impair its use, value and safety).  Mr. Woolums purchased this motor coach for the purpose of enjoying travel with his family, but has not been able to enjoy this purchase.

(Doc. 20, Ex. F at 3.)  Taylor reached his conclusion based on thirty years of experience in the automotive industry, sixteen of which he worked as an automotive defect investigator.  (Id. at 4.)  Presently Taylor works in the Office of Defect Investigations for the National Highway Traffic Safety Administration, where he reviews customer complaints and inspects vehicles for defects.  (Id. at 19.)

The propriety of expert testimony may be challenged at the summary judgment stage.  See, e.g., Herbert v. Gen. Motors Corp., No. 3:CV-05-2152, 2007 WL 763030, at *2 (M.D. Pa. Mar. 8, 2007).  In the instant case, however, the court finds that the record is not sufficiently developed at the present time to allow the court to rule on such a challenge.  The parties have not briefed thoroughly their respective positions regarding the expert's qualifications, methodology, and conclusions, nor have they supplied expert deposition testimony or other evidence explicating the contents of Taylor's expert report.  Taylor has extensive experience in the automotive industry, particularly in the area of defect detection and repair.  A more thorough examination of his qualifications and methodology may reveal that he is

23

able to render a salient opinion about how particular defects affect the value of a vehicle.  At present, the court lacks the information necessary to apprise definitively Taylor's credentials to express an opinion on this issue.

Moreover, rendering a decision on this evidentiary issue is not necessary at present because it would not affect the court's summary judgment decision on the UTPCPL claim, as Woolums may assert that claim regardless of his ability to establish actual damages.  The court therefore concludes that a ruling on the admissibility of Taylor's opinion is more appropriately addressed via a motion in limine and evidentiary hearing or at trial.  See Smith v. Freightliner, LLC, 239 F.R.D. 390, 392-93 (D.N.J. 2006) (citing Elcock v. Kmart Corp., 233 F.3d 734, 745 (3d Cir. 2000) (noting that court conducted a Daubert hearing on expert witness's valuation methodology prior to ruling on a motion for summary judgment challenging legal sufficiency of expert's conclusions);  Racetrac Petrol., Inc. v. J.J.'s Fast Stop, Inc., No. , 2003 WL 251318, at *21 (N.D. Tex. Feb. 3, 2003) (declining to rule on motion to exclude expert testimony because its admissibility did not affect outcome of motion for summary judgment and stating that court would address the issue at the pretrial conference).  The court will deny the motion for summary

24

judgment insofar as it seeks a limitation on damages under the UTPCPL.[15]  This

denial is without prejudice to National's ability to challenge Taylor's qualifications,

methodology, or conclusions through a motion in limine or at trial.

## IV.   <u>Conclusion</u>

The warranty document issued by National is an express warranty governed

by the UCC, and Woolums may therefore maintain a claim for breach of express

warranty under the UCC and the Magnuson-Moss Act.  The warranty conspicuously

disclaims the implied warranties of merchantability and fitness for a particular

purpose, and summary judgment must be granted on Woolums' claim for breach of

implied warranties.

The UTPCPL permits Woolums to advance a claim based on the alleged

breach of warranty.  The motion for summary judgment will therefore be denied

---

[15]National argues that <u>Kruger v. Subaru of America, Inc.</u>, 996 F. Supp. 451 (E.D. Pa. 1998), dictates a contrary result.  The court disagrees.  In <u>Kruger</u>, the plaintiffs brought a breach of warranty claim seeking damages for the difference between the value of their vehicle without defects and its value as sold to them, with defective brakes.  <u>Id.</u> at 454.  The plaintiffs' filings in response to a motion for summary judgment failed to include any evidence of the value of the defective vehicle and instead stated that they would produce expert testimony about valuation upon denial of the motion.  <u>Id.</u> at 455-56.  The <u>Kruger</u> court found that by failing to produce any evidence in support of their position, the plaintiffs had not fulfilled their summary judgment burden.  <u>Id.</u> at 456.  It therefore granted the defendant's motion for summary judgment.  <u>Id.</u>

The instant case is distinguishable because there is valuation evidence in the record.  Woolums has provided Taylor's expert report, which opines that the value of Woolums' allegedly defective RV is roughly half its fair market worth sans the defects.  In light of the court's finding that an evaluation of Taylor's qualifications and methodology is more appropriately performed through a motion in limine or at trial, production of the report is sufficient to satisfy Woolums' summary judgment burden.

without prejudice to National's right to challenge the qualifications or methodology

of Woolums' expert through a motion in limine or at trial.[16]

       An appropriate order will issue.


                                         __S/ Christopher C. Conner__
                                         CHRISTOPHER C. CONNER
                                         United States District Judge

Dated:       January 17, 2008

---

[16]In light of the court's exhaustive review of the nature of plaintiff's claims and the disposition stated herein, the court is optimistic that the parties will be able to resolve their remaining disputes through mediation.  Hence, the court will issue forthwith an order of reference to mediation.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL WOOLUMS,** | : | **CIVIL ACTION NO. 1:06-CV-0787** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONAL RV and WORKHORSE** | : | |
| **CUSTOM CHASSIS** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 17th day of January, 2008, upon consideration of defendant

National RV's motion for summary judgment (Doc. 12), and for the reasons set for

in the accompanying memorandum, it is hereby ORDERED that:

1.    The clerk of court is instructed to AMEND the caption of this case so
that the defendant currently listed as Workhouse Custom Chassis
appears as Workhorse Custom Chassis.

2.    The motion for summary judgment (Doc. 12) is GRANTED in part and
DENIED in part as follows:

   a.    Summary judgment is GRANTED on plaintiff's claim for breach
of express warranty to the extent it arises from defects with the
following:  leveling jacks, television, front air conditioning unit,
kitchen countertop, range hood fan, misaligned steering wheel,
bathroom vent, fan, roof panels, antenna cable, entry door steps,
awnings, screen door, screws in the living room slide-out,
hazard and marking lights, rain gutter ends, refrigerator circuit
board, leaks in the bathroom area, keys jammed in the
compartment door, misaligned main awning, slide-out seals,
misaligned drawers, misaligned closet doors, and passenger seat
tear.

   b.    Summary judgment is GRANTED on plaintiff's claim for breach
of the implied warranty of merchantability and the implied
warranty of fitness for a particular purpose.

c. Summary judgment is in all other respects DENIED.  This denial is without prejudice to defendant's right to challenge the qualifications or methodology of plaintiff's expert via a motion in limine or at trial.

3. The clerk of court is directed to defer entry of judgment until the conclusion of this case.

4. The above-captioned matter will be referred to mediation by future order of court.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge